UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.N.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 20-cv-04946-TSH <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 23, 31 |

# I. INTRODUCTION

Plaintiff T.N. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 23. Defendant cross-moves to affirm. ECF No. 31. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

# II. PROCEDURAL HISTORY

On April 18, 2017, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits. AR 79, 202-10. The application was initially denied on June 2, 2017 and again on reconsideration on December 20, 2017. AR 94-97, 106-10. An Administrative Law Judge

---

[1] Partially redacted in compliance with the parties' stipulation, this Court's order, Federal Rules of Civil Procedure 5.2(c)(2)(B) and 5.2(e), and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* ECF No. 26.
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 10, 12.

("ALJ") held a hearing on April 10, 2019 and issued an unfavorable decision on August 19, 2019. AR 12-29, 35-71. The Appeals Council denied Plaintiff's request for review on May 27, 2020. AR 1-6. Plaintiff seeks review in this Court pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises three issues on appeal: (1) whether the ALJ erred in evaluating the medical evidence; (2) whether the ALJ erred in finding Plaintiff did not meet a listing; and (3) whether the ALJ erred in evaluating step five of the sequential analysis.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified). It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing

2

court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492 (citations omitted). The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.  DISCUSSION

### A.  Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 416.920(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since April 18, 2017, the application date. AR 18.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 416.920(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 416.920(c). Here, the ALJ determined Plaintiff had the following severe impairments:

3

1    polysubstance abuse disorder, minor multilevel broad-based disc bulge suggested without
2    significant canal stenosis, post-traumatic stress disorder, unspecified depressive disorder,
3    borderline intellectual functioning, 10 degree dextrothoracic scoliosis, and 17 degree levo
4    thoracolumbar scoliosis.  AR 18.

5    At step three, the ALJ evaluates whether the claimant has an impairment or combination of
6    impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the
7    "listings").  *See* 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings
8    describe impairments that are considered "to be severe enough to prevent an individual from doing
9    any gainful activity."  *Id.* § 416.925(a).  Each impairment is described in terms of "the objective
10   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 416.925(c)(3).  "For
11   a claimant to show that his impairment matches a listing, it must meet all of the specified medical
12   criteria.  An impairment that manifests only some of those criteria, no matter how severely, does
13   not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (simplified).  If a claimant's
14   impairment either meets the listed criteria for the diagnosis or is medically equivalent to the
15   criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age,
16   education, and work experience.  20 C.F.R. § 416.920(d).  Here, the ALJ determined Plaintiff did
17   not have an impairment or combination of impairments that meets the listings.  AR 18.

18   If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses
19   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do
20   despite their limitations, 20 C.F.R. § 416.945(a)(1), and determines whether they are able to
21   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,
22   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do
23   it."  *Id.* § 416.960(b)(1).  If the ALJ determines, based on the RFC, that the claimant can perform
24   past relevant work, the claimant is not disabled.  *Id.* § 416.920(f).  Here, the ALJ determined
25   Plaintiff has the RFC to

> perform light work as defined in 20 CFR 416.967(b) except he can lift/carry 20 pounds occasionally and 10 pounds frequently; and he can sit, stand, and walk for six hours in an eight-hour day. He is able to perform simple, routine, repetitive tasks, involving no more than simple work-related decisions and occasional work place changes;

> work limited to no more than occasional interaction with supervisors and brief, occasional interaction with coworkers; work which would not entail teamwork; and with no more than rare contact (no more than 5% of the workday) with the general public. With respect to concentration, persistence, and pace, he will be off-task less than ten percent of the time in an eight-hour workday.

AR 21. Based on this RFC, the ALJ determined Plaintiff could not perform his past relevant work, because he did not have any past relevant work. AR 27.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 416.960(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4] *Id.* Here, the ALJ determined, based on Plaintiff's RFC and the testimony of a vocational expert, that Plaintiff could perform other jobs existing in significant numbers in the national economy, including motel/hotel housekeeper and stock shop apparel, and therefore concluded that Plaintiff is not disabled. AR 27-29.

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* at 1114-15. "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.* at 1115 (citation omitted).

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citation omitted). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 416.966(d)(1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citation omitted).

**B.      Medical Opinions**

Plaintiff challenges the ALJ's findings that the opinions of treating nurse practitioner Cynthia Sharpe and examining psychologists Dr. Franklin and Dr. Touhy were all "not persuasive." AR 25-26.

**1.      Legal Standard**

Plaintiff filed her claim on April 18, 2017. AR 79. For benefits applications filed after March 27, 2017, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended.

Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and convincing reasons to reject a treating physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a treating physician's contradicted opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations omitted). However, under the current regulations, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017) (citation omitted); SSR 96-2p, 1996 WL 374188 (July 2, 1996) ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"). Some district courts have continued to apply the "clear and convincing" and "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). Others, including courts in this district, have not. *See, e.g.*, *V.W.*, 2020 WL 1505716, at *13; *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021).

"It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v.*

*Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (citing *Patricia F. v. Saul*, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)). However, the Ninth Circuit has recognized that the Social Security Administration may, by regulation, override the court's own prior interpretations of the Act. In *Lambert v. Saul*, the Court of Appeals addressed the conflict between its precedent establishing a presumption of continuing disability after a prior disability determination and the SSA's interpretation of the 1984 Reform Act, which found that no such presumption was available under the statute. 980 F.3d 1266, 1268 (9th Cir. 2020). In deferring to the agency's interpretation despite its own contrary precedent, the *Lambert* court noted that there are limited circumstances in which a court's own precedent is not controlling, and the court is in fact required to depart from it. *Id.* at 1274. "Those circumstances include the intervening higher authority of an administrative agency's authoritative and reasonable interpretation of a statute." *Id.* (internal quotations and citations omitted). Finding first that the SSA's interpretation was entitled to deference, the Court of Appeals further concluded that "the SSA's authoritative interpretation of the Social Security Act displaces our prior precedents on the issue of a presumption of continuing disability." *Id.* at 1275. Given the Ninth Circuit's holding in *Lambert*, the Court finds "it must defer to the new regulations, even when they conflict with judicial precedent." *Timothy Mitchell B. v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021); *Agans*, 2021 WL 1388610, at *7.

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(a), (c)(1)-(5). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853). When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate. 20 C.F.R. § 416.920c(b)(2).

1    "Although the regulations eliminate the 'physician hierarchy,' deference to specific

2    medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how

3    [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical

4    opinions.'" *V.W.*, 2020 WL 1505716 at *14 (citation omitted; brackets in original). "Further, the

5    ALJ is required to specifically address the two most important factors, supportability and

6    consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

### 2. Nurse Practitioner Sharpe

N.P. Sharpe completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" form about Plaintiff on April 12, 2019. AR 892-96. N.P. Sharpe diagnosed Plaintiff with chronic midline low-back pain without sciatica and scoliosis. AR 892. She found limited mobility on Plaintiff's physical examination and noted that Plaintiff complained of lower-back pain and difficulty ambulating. AR 892. She opined that Plaintiff could lift less than 10 pounds occasionally, could stand and walk about two hours during an eight-hour day, could sit less than two hours during an eight-hour day, could only sit or stand for 20 minutes before needing to change positions, needed to walk around for five minutes every 10 minutes, and needed to be able to shift positions at will from sitting to standing or walking. AR 893. N.P. Sharpe based these limitations on CT imaging studies showing severe scoliosis, disc bulges, and canal stenosis as well as ongoing severe soft-tissue disease of Plaintiff's right-upper extremity. AR 894.

N.P. Sharpe opined that Plaintiff could never twist, crouch, or climb ladders, could occasionally stoop, and could frequently climb stairs. *Id.* She also found that Plaintiff had a decreased capacity to reach, feel, push, and pull, especially with weight bearing. *Id.* These limitations were based on imaging studies and Plaintiff's physical examination. AR 895. N.P. Sharpe found that Plaintiff should avoid concentrated exposure to extreme heat and cold, wetness, humidity, and noise, and should avoid all exposure to hazards such as machinery and heights. *Id.* N.P. Sharpe assessed these environmental limitations because Plaintiff's balance could be impacted by his injuries, especially if he was holding tools or operating machines or appliances. *Id.* N.P. Sharpe opined that Plaintiff's impairments would interfere with his concentration or pace of work 40 percent of the day and would cause him to be absent from work more than three times

per month. AR 896.

The ALJ found this opinion "not persuasive" because (1) "this checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions" and (2) "the assessment is inconsistent with the record as a whole, including examination findings of [Plaintiff's] normal range of motion, lack of edema, lack of tenderness, and ability to ambulate, which do not indicate a need for the broad and extensive limitations suggested." AR 26. While these two reasons correspond well to the required categories of "supportability" and "consistency," 20 C.F.R. § 416.920c(b)(2), the Court finds that neither conclusion is supported by substantial evidence.

First, with regard to supportability, the ALJ's claim that N.P. Sharpe's opinion was a "checklist-style form . . . without any rationale for [its] conclusions," AR 26, is not supported by the form itself. As the ALJ himself noted, N.P. Sharpe stated in various places that her conclusions were based on Plaintiff's CT imaging studies showing severe scoliosis, disc bulges, and canal stenosis, ongoing severe soft-tissue disease of Plaintiff's right-upper extremity, Plaintiff's physical examination, and his balance problems. AR 26, 894-95. It is unclear what additional "rationale" the ALJ felt was required. Nor does the ALJ provide any explanation or support for the claim that this form appeared to be completed as an "accommodation" to Plaintiff. AR 26.

Notably, the Commissioner does not try to defend the ALJ's statement that N.P. Sharpe's opinion was a checklist-style form without any rationale, provided as an accommodation to Plaintiff. Instead, the Commissioner argues that N.P. Sharpe's provided rationale was not "sufficient" because, according to the Commissioner, the imaging studies and physical examination that N.P. Sharpe said she relied on did not support her conclusions. *See* Def. Mot. at 10-11. But this Court is "constrained to review the reasons the ALJ asserts," not post-hoc arguments raised by the Commissioner. *Brown-Hunter*, 806 F.3d at 492 (simplified); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citation omitted). The reason actually asserted by the ALJ was that N.P. Sharpe did not provide any rationale for her

conclusions. AR 26. That stated reason is not supported by substantial evidence.

Second, turning to consistency, the ALJ found that the "broad and extensive limitations" opined by N.P. Sharpe were inconsistent with other physical examinations showing normal range of motion in Plaintiff's hip, extremities and neck, lack of edema, lack of tenderness, and an ability to ambulate. AR 18, 24-26, 376-78, 744, 768-69, 792. The ALJ did not, however, explain which of N.P. Sharpe's assessed limitations were inconsistent with which of these examination findings or why. AR 26. And it is unclear to the Court what the alleged inconsistency is, given that N.P. Sharpe did not find, or purport to base her opinions on, decreased range of motion in Plaintiff's neck, hip, or extremities, edema, tenderness, or an inability to ambulate.[5] The Court therefore finds that the ALJ's stated reason for finding N.P. Sharpe's opinions inconsistent with the record is not supported by substantial evidence.

In sum, the ALJ erred in his analysis of both the supportability and the consistency of N.P. Sharpe's opinions and remand is thus warranted.

### 3. Dr. Franklin

Dr. Franklin conducted a psychological evaluation of Plaintiff on February 1, 2018.[6] AR 781-87. The evaluation consisted of a clinical interview, Mini Mental State Examination ("MMSE"), Trail Making Test, Forms A and B, and the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"). AR 781. Dr. Franklin noted that Plaintiff's attention was impaired on formal measures, he worked at a slow rate, he was not able to sustain attention, his memory was well-below average, his speech was somewhat slow, his mood was depressed, and his fund of knowledge, intelligence, and abstraction were low based on formal testing. AR 782-83. Based on behavioral observations during the evaluation and the mental status exam, Dr. Franklin opined that

---

[5] N.P. Sharpe did note that Plaintiff complained of difficulty ambulating, AR 892, but she did not state that she was basing any opinions on this complaint, AR 894-95, and, in any event, an overall difficulty ambulating is not inconsistent with the treatment records noting an ability to ambulate, an ability to ambulate "at bedside" without difficulty, and a "slow gait." AR 376-78, 792.

[6] The evaluation states that Dionne Childs, MS was the examiner and Dr. Franklin was the supervisor, and both signed the evaluation. AR 781, 786. For simplicity, and consistent with the ALJ's treatment of the evaluation, the Court will simply refer to the evaluation as being performed by Dr. Franklin. *See* AR 23.

10

the results of testing appeared to be a valid representation of Plaintiff's psychological and cognitive functioning. AR 783.

On the WAIS-IV, Plaintiff's Full-Scale IQ was 70, placing him in the "Well Below Average" range of intellectual functioning. AR 784. All of Plaintiff's composite scores on sub-parts of the test were also in the "Well Below Average" range, except for his perceptual reasoning score, which was in the "Low Average" range. AR 783.

Dr. Franklin found that Plaintiff put forth adequate effort on the MMSE and the Trails A and B Tests. AR 784. Dr. Franklin noted that the MMSE is a simple test that helps to screen for patients with more severe neuropsychological illnesses as a result of brain disease or physical trauma. *Id.* Patients with serious mental illnesses do not always present as impaired on the MMSE. *Id.* The Trails Test, on the other hand, is used to measure a person's ability to pay attention, work quickly, plan ahead, and sequence. *Id.* It is used to screen for serious neuropsychological problems. *Id.*

On the MMSE, Plaintiff was unable to count backward by sevens, but was able to spell the word "world" backward. *Id.* His overall MMSE score was 29/30, which suggested no impairment. *Id.* Plaintiff's performance on the Trails A Test was within normal limits, but his performance on the Trails B test showed impaired performance of executive functioning. *Id.*

Dr. Franklin also noted that Plaintiff endorsed PTSD symptoms and depressed mood. AR 785. Overall, Dr. Franklin concluded that Plaintiff displayed an impairment of general mental abilities. *Id.* Dr. Franklin diagnosed Plaintiff with PTSD, unspecified depressive disorder, and borderline intellectual functioning. *Id.* She concluded that Plaintiff's GAF score would indicate that Plaintiff has an impairment in occupational functioning. *Id.*

Dr. Franklin found that Plaintiff had marked impairments in his abilities to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for two-hour segments; and (3) perform at a consistent pace without an unreasonable number and length of rest periods. AR 787. These three areas of "marked" impairments were the only areas in which Dr. Franklin assessed more severe limitations than the ALJ's assessments of "moderate" limitations in all four major areas of mental functioning. AR 19, 787.

11

The ALJ found Dr. Franklin's opinions "not persuasive" because: (1) the opinions were "somewhat unsupported by [Dr. Franklin's] finding that [Plaintiff's] overall mini mental status exam suggested no impairment"; (2) the opinions were "somewhat inconsistent with the record as a whole, including other examination findings of his alert and oriented state of being, appropriate mood and affect, lack of mood changes, normal memory, and normal insight and judgment"; and (3) Plaintiff "underwent the examination by Dr. Franklin not in an attempt to seek treatment for symptoms, but rather through attorney referral in an effort to generate evidence" and "Dr. Franklin was presumably paid for the report." AR 25. These three reasons map well onto three relevant factors under the regulations: supportability, consistency, and relationship with claimant. 20 C.F.R. § 416.920c(c)(1)-(3). However, the Court finds that these reasons are not supported by substantial evidence and are insufficient to find Dr. Franklin's opinions unpersuasive.

First, as the ALJ partially acknowledged, Dr. Franklin's opinions were supported by other parts of her examination, including: (1) Dr. Franklin's observations that Plaintiff worked and spoke at a slow rate, was not able to sustain attention, and had well-below average memory; (2) Plaintiff's inability on the MMSE to count backwards by seven; (3) Plaintiff's "Well Below Average" scores on the WAIS-IV; and (4) Plaintiff's impaired executive functioning on the Trails B Test. AR 25, 782-84. Moreover, Dr. Franklin did not ignore Plaintiff's MMSE scores, but instead explained that the MMSE was a "simple measure," that "[p]atients with serious mental illnesses may not always present with impairments" on the MMSE, and that the Trails Test, which did show impairment, is a more sensitive measure. AR 784. In light of this explanation, and the ALJ's failure to address this explanation, the Court finds that the ALJ did not provide substantial evidence for his conclusion that Dr. Franklin's opinions were "somewhat unsupported" by her examination.

Second, the ALJ found that Dr. Franklin's opinions were "somewhat inconsistent" with the record as a whole and cited mental status examinations at other appointments where Plaintiff was alert and oriented, had appropriate mood and affect, did not report any mood changes, and had normal memory, insight, and judgment. AR 23, 25, 363, 369, 378, 704, 765, 769. But the ALJ did not explain how these normal findings were inconsistent with Dr. Franklin's assessed

12

limitations. The only inconsistency apparent to the Court is that Dr. Franklin found that Plaintiff had a marked impairment in his ability to understand, remember, and carry out detailed instructions, yet one of the records cited by the ALJ noted "normal" memory. AR 769, 787. The Court does not find this single, unelaborated reference to "normal" memory to be substantial evidence to find Dr. Franklin's opinions, which were explained in detail and supported by psychological testing, to be inconsistent with the record. *See* AR 783-84, 787.

Third, the ALJ found Dr. Franklin's opinions less persuasive because Plaintiff was referred to Dr. Franklin by his attorney to generate evidence for Plaintiff's claim and Dr. Franklin was presumably paid for her report. AR 25. These facts do not constitute substantial evidence to find Dr. Franklin's opinions unpersuasive, absent some other evidence of bias on Dr. Franklin's part, which the ALJ did not find. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("[T]he fact that the examination was conducted at the request of an attorney is relevant *where the opinion itself provides grounds for suspicion as to its legitimacy*.") (emphasis added).

The Commissioner argues that the ALJ properly considered the reason Plaintiff visited Dr. Franklin because "the purpose for treatment that a claimant receives from a medical source may help demonstrate the level of knowledge the medical source has of the claimant's impairment." Def. Mot. at 17 (citing 20 C.F.R. § 416.920c(c)(3)(iii)). But neither the ALJ nor the Commissioner has explained how the fact that Plaintiff was referred to Dr. Franklin by his attorney would affect "the level of knowledge [Dr. Franklin] has of [Plaintiff's] impairment." Instead, it appears the ALJ was implicitly finding that Dr. Franklin was biased, and the Court finds this conclusion contrary to Ninth Circuit caselaw and not supported by substantial evidence.

In sum, none of the reasons cited by the ALJ for finding Dr. Franklin's report unpersuasive are supported by substantial evidence. Remand is therefore warranted.

### 4. Dr. Touhy

Dr. Touhy conducted a psychological evaluation of Plaintiff on March 7, 2019. AR 788-

803. The evaluation consisted of a clinical interview, review of records, and the following assessments: mental status examination, Trail Making Tests, WAIS-IV, Clinician-Rated Dimension of Psychosis Symptoms Severity scale, Generalized Anxiety Disorder scale, Patient Health Questionnaire, Primary Care Post Traumatic Stress Disorder Screen, and PTSD Checklist for DSM-V.  AR 788.

Dr. Touhy noted that Plaintiff had a decreased rate of speech, his articulation was hard to understand at times, and he had an increased latency between his thoughts and verbal expression.  AR 791. Plaintiff also had suicidal ideation, illusions, and paranoia.  *Id.*  His affect was dysphoric and stable.  AR 792.  He had a slow gait.  *Id.*  He had difficulty maintaining attention and focus and his immediate short- and long-term memory were impaired.  *Id.*  He had some insight but lacked judgment into his current condition.  *Id.*  Based on Plaintiff's mental status examination and Dr. Touhy's behavioral observations, Dr. Touhy believed that the results of psychological testing adequately represented Plaintiff's psychological functioning.  *Id.*

On the Trail Making Tests, Plaintiff made multiple mistakes, needed help multiple times, and gave up towards the end of Form B, indicating significant problems with his rote memory and executive functioning.  AR 793.  On the WAIS-IV, Plaintiff's Full-Scale IQ score was in the "Borderline" range, indicating "severe significant problems with global cognitive functioning."  AR 793, 799.  Plaintiff's composite scores on the WAIS-IV ranged from Low Average to Borderline.  AR 793.  Plaintiff's other test scores indicated severe depression and anxiety as well as PTSD symptoms that are significantly impacting his daily functioning and ability to form and maintain relationships.  AR 800.  Dr. Touhy diagnosed Plaintiff with persistent depressive disorder, severe major depressive disorder with anxious distress, PTSD, unspecified neurocognitive disorder, severe cannabis use disorder, and moderate opioid use disorder.  AR 801.  Dr. Touhy found that Plaintiff had marked or extreme impairments in all categories of work-related functioning.  AR 802-03.

As with Dr. Franklin's opinions, the ALJ found Dr. Touhy's opinions "not persuasive" for three reasons: (1) the opinions were "somewhat unsupported" by Dr. Touhy's mental status examination findings; (2) the opinions were "inconsistent with the record as a whole" including

14

other mental status examination where Plaintiff had appropriate mood and affect, lack of mood changes, normal memory, normal insight and judgment, logical thought process, and pleasant demeanor; and (3) Plaintiff was referred to Dr. Touhy by his attorney to generate evidence for his claim and Dr. Touhy was presumably paid for her report. AR 26. These three reasons, which are almost identical to the reasons given for finding Dr. Franklin's opinions unpersuasive, are once again not supported by substantial evidence.

First, the fact that Dr. Touhy found that Plaintiff was alert and cooperative, made good eye contact, and put forth adequate effort does not undermine her conclusions. AR 26, 791-92, 801. Dr. Touhy's assessed limitations were based on Plaintiff's cognitive difficulties, impaired memory, depression, anxiety, difficulty focusing, and irritability. *See* AR 801-02. There is no inconsistency between finding these limitation-causing symptoms exist and also finding that other symptoms do not exist. The fact that Plaintiff was alert does not mean that Plaintiff does not have significant cognitive impairments. Nor does the fact that, in a structured clinical environment, with a trained mental health professional, Plaintiff was able to make good eye contact, was cooperative, and put forth adequate effort on testing mean that Plaintiff would be able to interact appropriately with coworkers and supervisors in the entirely different context of a full-time mandatory work environment.[7] Accordingly, the Court finds the ALJ did not provide substantial evidence for his conclusion that Dr. Touhy's opinions were not fully supported by her examination.

Second, the ALJ's reliance on normal findings from other mental status examinations is insufficient to conclude that Dr. Touhy's opinions are inconsistent with the record as a whole. AR 26. The ALJ failed to explain how the cited normal findings contradict Dr. Touhy's opinions. *Id.* The only findings on these examinations that appear to be inconsistent with the stated bases for

---

[7] It is especially troublesome that the ALJ found Dr. Touhy's assessed limitations less persuasive because Plaintiff put forth adequate effort on testing. If this were a valid basis to find a doctor's opinions unpersuasive, claimants with mental impairments would be put in a no-win situation: put forth adequate effort on testing and the doctor's opinions are unpersuasive because the claimant is capable of putting forth effort, or don't put forth adequate effort and the doctor's opinions are unpersuasive because the claimant was malingering during testing.

15

1 Dr. Touhy's limitations are the "normal" memory and mood and affect findings.  AR 26, 801-02.
2 But Dr. Touhy's findings of impaired memory, depression, anxiety, PTSD symptoms, and
3 irritability were based on psychological testing, *see* AR 799-802, whereas the "normal" memory
4 and mood and affect findings cited by the ALJ came from unelaborated mental status
5 examinations at general check-ups or hospital visits for unrelated issues.  *See* AR 361-63 (hospital
6 visit for hip abscess), 366-69 (same), 378 (same), 703-04 (hospital visit for right-arm abscess),
7 767-69 (general check-up).  The only psychiatric treatment note cited by the ALJ actually found
8 depressed mood and flat affect not "normal" mood and affect.  AR 764-65.  Dr. Franklin, who also
9 performed psychological testing, similarly found that Plaintiff had impaired memory, depression,
10 anxiety, and PTSD symptoms.  AR 782-85.  In other words, records specific to Plaintiff's mental
11 health support Dr. Touhy's findings and conclusions.  The "normal" findings on mental status
12 examinations performed at hospital visits unrelated to mental health do not constitute substantial
13 evidence to support the ALJ's conclusion that Dr. Touhy's opinions were inconsistent with the
14 record.

15 Third, as with Dr. Franklin, the ALJ found that Dr. Touhy's opinions were unpersuasive
16 because Plaintiff was referred to Dr. Touhy by his attorney and Dr. Touhy was presumably paid
17 for her report.  AR 26.  The Court finds this conclusion not supported by substantial evidence.
18 The reason that Plaintiff saw Dr. Touhy, standing alone, is not substantial evidence to find Dr.
19 Touhy's opinion unreliable, and the ALJ cited no other evidence showing bias.  AR 26; *Reddick*,
20 157 F.3d at 726; *Nguyen*, 100 F.3d at 1464.

21 Accordingly, the Court finds the ALJ failed to provide substantial evidence to support his
22 conclusion that Dr. Touhy's opinion was unpersuasive.  This error warrants remand.

23 **C.    Other Issues**

24 Plaintiff raises two additional arguments: (1) the ALJ erred in finding Plaintiff does not
25 meet a listing and (2) the ALJ's step-five determination was not supported by substantial evidence.
26 Plaintiff's arguments on these points, however, rely heavily on his argument that the ALJ erred in
27 assessing the medical opinions in this case.  *See*. Pl. Mot. at 11-16.  Because the Court agrees that
28 the ALJ erred in his assessment of the medical opinions, and because the ALJ's listings

16

1  determination and step-five determination were necessarily predicated on his assessment of the
2  medical opinions, the Court remands on these issues as well. On remand, the ALJ must analyze
3  whether Plaintiff meets a listing or is able to perform other jobs existing in significant numbers in
4  the national economy based on a proper assessment of the medical opinions.

### D. Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks, "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (simplified). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101).

It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Id.* at 1047. Further, even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1101). While all three credit-as-true factors may be met, the record as a whole could still leave doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11 (citation omitted). In such instances, remand for further development of the record is warranted. *Id.*

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's

disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings is appropriate.

### VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion and **REVERSES** the ALJ's decision.  This case is **REMANDED** for further administrative proceedings consistent with this order.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: October 5, 2021

THOMAS S. HIXSON
United States Magistrate Judge